## RUSSELL v. RACKETT.[1]

### (District Court, S. D. New York. April 25, 1891.)

SEAMAN'S WAGES—VESSEL RUN ON SHARES—MASTER TO PAY WAGES—NOTICE TO SEA-
MAN—OWNER'S LIABILITY.

A schooner was run under an agreement between owner and master by which
the master was to pay all wages of crew. Libelant was engaged as mate of the
vessel, without notice that the schooner was running on a lay, which fact he
learned incidentally some months later. On libelant's discharge the master gave
him a written statement that "Capt. Schr. Eurotas & owner" owed him $90 wages.
This was not presented to the owner of the vessel, nor any notice of it given him un-
til after the master had been discharged in debt to the owner. This suit was brought
against the owner to recover the said amount of wages. *Held*, that the cumulative
remedies against ship, master, and owner, which the law upholds in favor of a sea-
man for his wages, ought not to be abridged, except in cases of a clear, common
understanding to that effect; that the accidental notice of the lay received by libel-
ant was not sufficient to relieve the owner from liability in case the master were
negligent or treacherous; and that libelant was entitled to recover.

In Admiralty. Suit to recover balance of seaman's wages.

*C. Brainerd, Jr.*, for libelant.

*Wilcox, Adams & Macklin*, for respondent.

BROWN, J. The libelant, mate of the schooner Eurotas, sues the re-
spondent, her owner, for a balance of $90 wages, at the rate of $25 per
month, up to the 26th of April, 1889, when he was discharged. The
schooner was engaged in the coasting trade, and was run by the master
upon shares, under an agreement by which he was to pay for all provis-
ions and wages of the crew and one-half of the port charges, the owner
paying the other half of the port charges. The net proceeds of the
freight were to be divided equally between the owner and the master.
The mate was engaged by the master in September, 1888, without no-
tice that the schooner was running on a lay. He was incidentally in-
formed of the fact, however, by the master several months later, and he
afterwards assisted the master sometimes in making up the computa-
tions. The balance of wages claimed accrued after he had this knowl-
edge. Upon his discharge the master gave him a statement in writing
that "Capt. Schr. Eurotas & owner" owed him $90 wages. This was
not presented to the respondent, nor any notice of it given him, until a
demand by letter on the 20th of June, about 10 days after the master
had been discharged. The respondent meantime had paid the master
about $250, and the master was then in debt to the respondent. The
mate had been all the time in Haddam, Conn., and no other reason is
given for not previously notifying the respondent than that he was ex-
pecting shortly to come to New York. The mate was informed by the
master some time before he left the schooner that the lay was not turn-
ing out well, and he occasionally, he says, lent the master small sums
of money, which were returned when the mate was discharged.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

The various cumulative remedies against ship, master, and owner which the policy of the law upholds in favor of seamen for the collection of wages due them ought not to be abridged, except in cases of a clear, common understanding to that effect. *Skolfield* v. *Potter*, 2 Ware, 394; *Harding* v. *Souther*, 12 Cush. 308. Analogies drawn from supplies furnished to chartered ships are not precisely applicable to vessels running upon shares with the captain. It is more consonant with justice in the latter class of cases that the remedies of seamen and officers against all interested should remain unimpaired, except upon some distinct understanding to the contrary, either at the time of shipment, as intimated by Judge WARE, or subsequently by some notice equally explicit. It is always in the power of the owner, if it is his intention that the crew shall have no personal remedy against him, to give them explicit notice that such are the terms of service. No doubt in the present case it was expected that the master would pay the wages; but the libelant had no notice of the arrangement with the owner for several months after he shipped, and he first learned it, not on notice from the owner, but only upon casual information from the captain, evidently not intended to change the mate's relation to the owner, or to inform the mate of any curtailment of his security for wages. The respondent at no time did anything to protect himself against his ultimate responsibility in case the business of the ship should be unprofitable, except to inquire from time to time of the master whether all bills were paid. These inquiries were prudent, and they were consistent with the fact of the owner's ultimate responsibility in case the master was negligent or treacherous. No doubt the owner relied upon the master's information, but this did not prejudice the seamen.

I cannot doubt, upon the testimony of the libelant and the master, that the balance claimed is really due the libelant. The reason assigned by him for not presenting his claim to the owner sooner is not indeed very satisfactory; but the certificate which he received from the master stated that the master, as well as the owner, owed him the $90 now claimed, and, as the master was expected to pay it in the first instance, the libelant might naturally give the master some further time to pay, and wait until he came to New York before calling upon the owner. The mere delay in presenting the claim does not constitute any such estoppel as to prevent recovery. The owner must look to the master for indemnity under his contract. Decree for libelant for $90, with interest and costs.